14461

WARD *ET AL.* v. TOWN OF DARLINGTON

(190 S. E., 826)

January, 1937.

Mr. *Jerome F. Pate,* for appellant,

Mr. *E. C. Dennis, Jr.,* for respondents,

April 6, 1937.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

December 1, 1936, the town council of Darlington passed an ordinance entitled "An Ordinance to Govern The Keeping of Cows Within The Limits Of The Town Of Darlington." An ordinance of the same title had been passed by the town council of Darlington the 6th day of October, 1936; the first named ordinance was amendatory of the last named.

The respondents brought action to enjoin the enforcement of the amended ordinance.

December 22, 1936, Judge Dennis issued an order which enjoined the Town of Darlington, its agents, officers, and servants, from enforcing, or attempting to enforce, the amended ordinance, and required the plaintiffs to give an undertaking, without sureties, in the sum of $100.00 for the protection of the defendant; and gave the defendant leave, upon four days' notice, to move for a modification or dissolution of the order of injunction.

The defendant demurred to the complaint and moved to dismiss and set aside the order of injunction, as aforesaid granted.

The demurrer and motion to discharge the order of injunction were disposed of in this brief order indorsed on the original demurrer: "Demurrer Overruled."

The appeal is from the order of injunction and the order overruling the demurrer.

There is but one exception, but under that one nine specifications of error are stated. Counsel for appellant and respondents state in nearly similar language the questions which they conceive to be involved in the appeal. They are by us reduced to the following issues:

1. Is the ordinance complained of unreasonable?

2. Is it discriminatory?

3. Is it unconstitutional as violative of the due process clauses of Art. 1, § 5, of the Constitution of South Caro-

lina, and of the Fourteenth Amendment of the Constitution of the United States?

We need not stop to consider whether the town council had power to pass an ordinance to regulate the keeping of cows within the limits of the Town of Darlington.

Section 7233, Vol. 3, Code, 1932, gives the authority in these words:

*"Power to Enact Rules or Ordinances for Police Government.*—The city councils and town councils of the cities and towns of the State shall, in addition to the powers conferred by their respective charters, have power and authority to make, ordain and establish all such rules, by-laws, regulations and ordinances respecting the roads, streets, markets, police, health and order of said cities and towns, or respecting any subject as shall appear to them necessary and proper for the security, welfare and convenience of such cities and towns, or for preserving health, peace, order and good government within the same."

It was for long the established rule in this jurisdiction that the reasonableness of a municipal ordinance, which on its face declared it to be reasonable, could not be inquired into by the Courts. See *City Council of Charleston v. Ahrens,* 4 Strob., 241; *City Council of Charleston v. Wentworth Street Baptist Church,* 4 Strob., 306; *Town Council of Summerville v. Pressley,* 33 S. C., 56, 11 S. E., 545, 8 L. R. A., 854, 26 Am. St. Rep., 659; *Town of Darlington v. Ward,* 48 S. C., 570, 26 S. E., 906, 38 L. R. A., 326 and other cases.

That rule has been superseded in this jurisdiction, and others, by the more logical rule that the Courts may inquire into the action of the municipality to determine whether it has exercised its power in accordance with the constitutional and statute laws of the United States and the several states, and may determine whether its ordinance is reasonable.

In the case of *City of Columbia v. Alexander*, 125 S. C., 530, 119 S. E., 241, 243, 32 A. L. R., 746, this Court said: "However broad the statement contained in the *Town of Darlington v. Ward* case may be considered, the opinion clearly foreshadows the conclusion subsequently reached by the Court: That the unreasonableness of an ordinance may be so great as to violate constitutional privileges." Citing *State ex rel. Southern Ry. Co. v. Earle*, 66 S. C., 194, 44 S. E., 781; *Thomasson v. R. R. Company*, 72 S. C., 1, 51 S. E., 443.

In the case of *Henderson v. City of Greenwood*, 172 S. C., 16, 172 S. E., 689, 692, this Court said:

"Under the early decisions of this Court it was held that the Court did not have power to pass upon the reasonableness of an ordinance if the power to pass such an ordinance be conceded. [Citing authorities.]

"That the doctrine has been changed very materially can be readily seen by reference to the case of *City of Columbia v. Alexander* * * * .In that case all of the authorities are cited and the law established that the reasonableness of an ordinance may be considered by the Court as a test of its constitutionality."

The ordinance in question in the present case is questioned on the ground that it takes from plaintiffs their property without due process of law, because it imposes upon the citizen who keeps a cow, or cows, in the Town of Darlington conditions which are arbitrary, unjust, and unreasonable, and not within the police power of the town.

The ordinance prohibits the keeping of a cow, or cows, in the Town of Darlington unless the keeper of the cow conforms to and is governed by the following regulations:

"(a) The area in which. a cow is kept and maintained shall be high and dry, containing not less than three hundred (300) square feet for each cow so kept and maintained, and so located that no portion of same shall abut an adjoining dwelling house.

"(b) A stable shall be provided for said cow or cows, which shall be not less than six hundred (600) cubic feet of air space. The walls and ceiling shall be smooth and kept free of cobwebs and the floors must be constructed by either of the following plans:

"(1) The floors shall be concrete, properly graded, and either drained into the city drain or into a septic tank or other suitable receptacle to avoid any offensive odors or breeding places for flies (removable wooden floors over a concrete base, or straw bedding that is removed at least twice a week, is hereby permitted provided that the concrete is kept in a clean and sanitary condition), or

"(2) The floor may be constructed by excavating or digging out the bottom of the stable to a depth of at least three (3) feet and filled in with cinders or coarse rock which is tamped or trampled down and covered with sand, or,

"(3) Either of the above floor plans may be covered over with choice of bedding but must be removed at least twice a week. If concrete floor is used it must be washed off after the removal of droppings and if the second type of floor is used it must have fresh sand thrown on after removal of droppings, also disinfectant (such as kreso dip) to disinfect and deodorize.

"(c) All cows must be tuberculin tested at least three (3) years and all cows must also be kept free from Bank's disease.

"(d) A proper drinking tank with a running water cock threaded to accommodate a hose, and if the premises are located in a vicinity where running water is not available, a pump shall be provided to furnish water at all times for cleansing purposes and for drinking water for the cows.

"(e) The stable shall be kept clean and free from manure and offensive odors at all times.

"(f) All manure shall be removed from the stable and lot at least twice a week.

"(g) The cow or cows must be kept within the confines of the owner's premises at all times, unless permission has been granted by the Health Officer or Inspector to graze the cow on the property of other persons with their consent, and in such cases the droppings from the cow must be removed daily."

Is this ordinance unreasonable because it deprives the plaintiffs of their property without due process of law? Is it discriminatory?

It must be borne in mind that in the exercise of its powers to preserve and protect the health of the inhabitants of the municipality, the range of the exercise of the powers of the council is much wider than in its relation to other matters.

"It may be observed also with regard to the extent to which the Court will inquire into the reasonableness or the necessity of such a law, the Courts place laws regulating lawful business enterprises in a class separate and distinct from those enacted to protect the public health." *City of Columbia v. Alexander, supra;* citing *Kirk v. Board of Health,* 83 S. C., 372, 378, 65 S. E., 387, 389, 23 L. R. A. (N. S.), 1188.

In the cited case of *Kirk v. Board of Health,* Mr. Justice Woods, for this Court, said: "The State must of necessity lodge the power somewhere to ascertain, in the first instance, and act with promptness, when the public health is endangered by the unhealthful condition of the person or the property of the individual; and the creation by legislative authority of boards of health, with the discretion lodged in them of summary inquiry and action, is a reasonable exercise of the police power. * * * In all judicial inquiry, with respect to health laws and regulations, every intendment is to be allowed in favor of the validity of the statute and the lawfulness of the measures taken under it."

We do not think the ordinance in question is unconstitutional on the ground that it deprives the citizens—the plaintiffs—of their property. They still have it. They contend that the conditions imposed along with the license to keep cows in the town are arbitrary and unnecessary, for that they impose a prohibitive expense in the erection and maintenance of the stalls, drainage and water tanks. It was incumbent on plaintiffs to show the amount of such expenses and the inability of plaintiffs to meet them. They assert these things in their complaint, and they argue that defendant's demurrer admits the truth of the allegations. In a sense of pleading, that is true, but the demurrer does not admit the legal conclusions of the complaint.

"Inasmuch as we hold that the city was acting within the terms of the legislative grants to it in enacting the ordinance about which the controversy has here arisen, the burden is upon the defendant to show that the ordinance is unreasonable." *City of Chicago v. Charles Rhine,* 363 Ill., 619, 2 N. E. (2d), 905, 907, 105 A. L. R., 1045. Citing numerous authorities.

"The reasonableness of an ordinance is a question of law for the Court to decide; * * * but a controversy as to the facts of the case must be determined by a jury." *State ex rel. So. Ry. v. Earle,* 66 S. C., 194, 44 S. E., 781 783.

"The order here in question deals with a subject clearly within the scope of the police power. See *Turner v. Maryland,* 2 S. Ct., 44, 107 U. S., 38, 27 L. Ed., 370. When such legislative action is called in question, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of the existence of that state of facts, and one who assails the classification must carry the burden of showing by a resort to common knowledge, or other matters which may be judicially noticed, or to other legitimate proof, that the action is arbitrary.' *Borden's Farm Products Co. v. Baldwin,* 293 U. S., 194, 209, 55 S. Ct.,

187, 192, 79 L. Ed., 281 [288]. The burden is not sustained by making allegations which are merely the general conclusions of law or fact. See *Public Service Comm. v. Great Northern Utilities Co.,* 289 U. S., 130, 136, 137, 53 S. Ct., 546, 77 L. Ed., 1080. Facts relied upon to rebut the presumption of constitutionality must be specifically set forth. See *Aetna Ins. Co. v. Hyde,* 275 U. S., 440, 48 S. Ct., 174, 72 L. Ed., 357. * * * A motion to dismiss, like a demurrer, admits only facts well pleaded." *Pac. States Box & Basket Co. v. White,* 296 U. S., 176, 56 S. Ct., 159, 163, 80 L. Ed., 138, 101 A. L. R., 853, Nov. 18, 1935.

Since the reasonableness of the ordinance is involved in the consideration of its constitutionality, it may not be inappropriate to quote this from an annotation attached to the case of *Jonesboro v. Kincheloe,* a Tennessee case reported in 32 A. L. R., 1367: "In treating herein of the validity of a municipal ordinance prohibiting or regulating the keeping of live stock, cases involving ordinances with respect only to the keeping of horses, mules or livery stables have not been included. * * * In a number of instances the Courts have upheld the validity of a municipal ordinance which prohibits the keeping of any live stock within the limits of a municipality." And cases are cited in support from the United States Supreme Court, from Georgia, Indiana, Iowa, Massachusetts, Missouri, North Carolina, and South Carolina.

The contested ordinance does not appear to us to be unreasonable and unconstitutional on the contested ground that it is discriminatory. It applies to all those who keep cows within the limits of the town.

"Ordinance prohibiting keeping of cows within restricted area held not void for discrimination." *State v. Stowe,* 190 N. C., 79, 128 S. E., 481, 40 A. L. R., 559.

An ordinance prohibiting private money lenders from charging usurious interest was held not to be discriminatory in *City of Columbia v. Phillips,* 101 S. C., 391, 85

S. E., 963, 964. The Court said: "Was the ordinance discriminatory? It does not appear to be from the record. The record does not show that there are any money lenders not included in the class."

So with the case at bar; it does not appear that there are any of those keeping cows in the town who are not included in the class.

In the case of *Douglas v. City Council,* 92 S. C., 374, 75 S. E., 687, 689, 49 L. R. A. (N. S.), 958, the city council of Greenville had passed an ordinance prohibiting Douglas from building a livery stable at a certain place. An action was brought to have the ordinance annulled. Among the reasons urged for its annulment was that it was unconstitutional, because it was discriminatory. This Court said thereabout: "The contention that the ordinance is discriminatory and denies to petitioner the equal protection of the law, cannot be sustained, *notwithstanding it was adopted to meet his case. That was merely an incident.* Its character in that respect must be judged from the ordinance itself. Upon its face, it does not appear to be discriminatory; nor does it appear that such will be the necessary result of its practical operation. *While it was primarily aimed at petitioner, it applies to all others in similar circumstances, and it applies to all alike."* (Italics added.)

From the same case we take this: "In *Fischer v. St. Louis,* 194 U. S., 361, 24 S. Ct., 673, 48 L. Ed., 1018, the Supreme Court of the United States had under consideration an ordinance which prohibited the building of any dairy or cow stable in the city, and the maintenance of any then existing, without consent of the municipal assembly. Fischer was convicted and fined for using stables which had been built before the passage of the ordinance. In response to his contention that the ordinance denied him the equal protection of the laws and deprived him of his property without due process of law, the Court said: 'Defendant's main contention, however, is that, by vesting in the municipal assembly the power to permit the erection

of dairy and cow stables to certain persons a discrimination is thus declared in favor of such persons and against all other persons, and the equal protection of the laws denied to all the disfavored class. The power of the Legislature to authorize municipalities to regulate and suppress all such places or occupations as, in its judgment, are likely to be injurious to the health of its inhabitants, or to disturb people living in the immediate neighborhood by loud noises or offensive odors, is so clearly within the police power as to be no longer open to question. The keeping of swine and cattle within the city, or designated limits of the city, has been declared in a number of cases to be within the police power. The keeping of cow stables and dairies is not only likely to be offensive to neighbors, but it is too often made an excuse for the supply of impure milk from cows which are fed on unhealthful food, such as refuse from distilleries, etc. (Citing cases.) We do not regard the fact that permission to keep cattle may be granted by the municipal assembly as impairing, in any degree, the validity of the ordinance or as denying to the disfavored dairy keepers the equal protection of the laws. Such discrimination might well be made where one person desired to keep 2 cows and another 50; where one desired to establish a stable in the heart of the city, and another in the suburbs; or where one was known to keep his stable in a filthy condition, and the other had established reputation for good order and cleanliness. Such distinctions are constantly made the basis for licensing one person to sell intoxicating liquors and denying it to others. The question in each case is whether the establishing of a dairy and cow stable is likely, in the hands of the applicant, to be a nuisance or not to the neighborhood, and to imperil or conduce to the health of its customers. As the dispensing powers must be vested in some one, it is not easy to see why it may not properly be delegated to the municipal assembly which enacted the ordinance. Of course, cases may be imagined where the power to issue permits may be abused, and the

permission accorded to social or political favorites and denied to others, who, for reasons totally disconnected with the merits of the case, are distasteful to the licensing power.' To the same effect, see *Liverman v. Van De Carr [People of State of New York v. Van De Carr]*, 199 U. S., 552, 26 S. Ct., 144, 50 L. Ed., 305; *California Reduction Co. v. Sanitary Reduction Works*, 199 U. S., 306, 26 S. Ct., 100, 50 L. Ed., 204; *Gundling v. Chicago*, 177 U. S., 183, 20 S. Ct., 633, 44 L. Ed., 725."

" 'Equal protection' clause guarantees only protection enjoyed by other persons or classes in same place and under like circumstances." *Harrison v. Caudle*, 141 S. C., 407, 139 S. E., 842, 843.

"Legislation affecting alike all persons of a class is not in violation of Const. Art. 1, § 5, or Const. U. S. Amend., 14." *Ex parte Hollman*, 79 S. C., 9, 60 S. E., 19, 20, 21 L. R. A. (N. S.), 242, 14 Ann. Cas., 1105.

"Equal protection clauses admit of exercise of wide scope of discretion and avoid legislative enactments only when they are without any reasonable basis." *Witt, etc., v. People's State Bank*, 166 S. C., 1, 164 S. E., 306, 83 A. L. R., 1068.

It appears unnecessary to cite other authorities.

We hold that the ordinance is not unconstitutional on any of the grounds urged by plaintiffs. It is not arbitrary, nor discriminatory. It is a legitimate exercise of the police power vested in the Town Council.

It is the judgment of the Court that the order overruling the demurrer to the complaint, and that which restrains the enforcement of the ordinance, are revoked, and the judgment of the lower Court is reversed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BAKER and FISHBURNE concur.